**RAVERT PLLC**
Gary O. Ravert
16 Madison Square West, FL 12, #269
New York, New York 10010
Tel: (646) 961-4770
Fax: (917) 677-5419

*Special Litigation Counsel for Debtors, Plaintiffs*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No.   22-10412 (MG) and |
| 26 BOWERY LLC and | 22-10413 (MG) |
| 2 BOWERY HOLDING LLC, | (Jointly Administered) |
|  |  |
| *Debtors In Possession.* |  |
|  |  |
| 26 BOWERY LLC and |  |
| 2 BOWERY HOLDING LLC, |  |
|  | Adv. Pro. No. 23-01150-mg |
| Plaintiffs, |  |
|  |  |
| v. |  |
|  |  |
| BARBARA MAK a/k/a WAI YUK |  |
| BARBARA MAK, |  |
|  |  |
| Defendant. |  |

**AMENDED[1] PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT**

---

[1] This memo of law was amended solely to change a small number of page references in the "Summary of Admitted Facts".

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Facts ........................................................................................................................................2

Summary of Admitted Facts…………………………………………………………………3

Jurisdiction…………………………………………………………………………………..4

Argument...................................................................................................................................5

**A.** On Count I, The Court Should Enter A Declaratory Judgment That The B. Mak Lease Is Void *Ab Initio* And Grant The Requested Relief.………..........................................................6

**B.** On Count II, The Court Should Enter A Declaratory Judgment That The B. Mak Lease Is Rescinded And Grant The Requested Relief ……………………………………………..14

**C.** On Count III, the Court Should Enter an Order Avoiding the B. Mak Lease as an Actual or Constructive Fraudulent Conveyance and Grant the Requested Relief………………….22

**D.** On Count IV, To The Extent That The Court Avoids Any Transactions Including But Not Limited To The B. Mak Lease, The Court Should Award The Value Of Such Transfers To The Debtors Pursuant To 11 U.S.C. §550 And As Requested By The Debtors…………….28

**E.** On Count V, To The Extent That The Court Determines That Barbara Mak Is In Possession, Custody Or Control Of Property Of These Estates, The Court Should Enter An Order Directing The Turnover Of Such Property To The Debtors………………………………...28

**F.** On Count VI, The Court Should Award Monetary Damages Against Barbara Mak For Prepetition And Postpetition Use And Occupancy In An Amount………………………….30

**G.** On Count VIII, The Court Should Enter An Order Finding Barbara Mak Was Unjustly Enriched At The Expense Of The Debtors, Resulting In Harm To The Debtors, And Directing Barbara Mak To Compensate The Debtors For Such Harm………………………..31

**H.** On Count IX, The Court Should Enter An Order Finding That Barbara Mak Engaged In A Civil Conspiracy For The Purpose Of Hindering, Delaying Or Defrauding Creditors And The Debtors And Awarding The Debtors Damages. ……………………………………………33

**I.** On Count X, The Court Should Enter An Order Finding That Barbara Mak Actually Or Constructively Hindered, Delayed Or Defrauded The Debtors And Creditors Of The Debtors And Awarding The Debtors Legal Fees. ………………………………………………………35

**J.** Dismissal Of The Affirmative Defenses Is Warranted………………………………………36

      a.  First Affirmative Defense: Failure To State A Claim……………………………38

b.    Second Affirmative Defense: Laches………………………………………………38

c.    Third Affirmative Defense: Prior Voided Lease………………………………...40

d.    Fourth Affirmative Defense: Prior Rescinded Lease……………………………40

e.    Fifth Affirmative Defense: Recovery Limited To Single Satisfaction…………..41

f.    Sixth Affirmative Defense: Statute Of Limitations……………………………...41

g.    Seventh Affirmative Defense: Defendant Not A Debtor………………………...43

h.    Eighth Affirmative Defense: Alleged Good Faith Transferee…………………...43

i.    Ninth Affirmative Defense: Alleged Mere Conduit…………………………….44

j.    Tenth Affirmative Defense: If Right To Use Or Possess Disputed……………...44

k.    Eleventh Affirmative Defense: Objection To Prepetition Use And Occupancy...45

Reservation of Rights…………………………………………………………………………45

Conclusion ………………………………………………………………………………………45

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Ackerman v. Shultz (In re SchultzI)*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000)……………………...39

*Adler & Shaykin v. Wachner*, 721 F.Supp. 472 (S.D.N.Y. 1988)……………………………….11

*Ajettix Inc. v. Raub*, 804 N.Y.S.2d 580, 9 Misc.3d 908, 2005 N.Y. Slip Op. 25366, 2005 WL 2140174 (Sup Ct, July 26, 2005)…………………………………………………………………...17

*Alexander v. Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968 (NY 1986)………………33

*Apfel v. Prudential-Bache Secs. Inc.*, 81 N.Y.2d 470, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (NY 1993)……………………………………………………………………………………………8

*In re Atlantic Computer Systems Inc.*, 142 B.R. 659 (Bankr. S.D.N.Y. 1992)……………………9

*Bersani v. General Acc. Fire & Life Assur. Corp., Ltd.*, 36 N.Y.2d 457 (N.Y. May 05, 1975)…11

*In re Celsius Network LLC*, 647 B.R. 631 (Bankr. S.D.N.Y. 2023)……………………………7, 8

*Charney v. Sullivan & Cromwell LLP*, 2007 WL 2822423 (N.Y. Sup.Ct. Sept. 27, 2007)……..33

*Fugelsang v. Fugelsang*, 517 N.Y.S.2d 176 (2d Dept. 1987)…………………………………....16

*George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211 (NY 1978)…………………..7

*In re Global Protection USA, Inc.*, 546 B.R. 586 (Bankr. D.N.J. 2016)………………………...44

*Greenberg v. Greenberg*, 646 F.App'x 31 (2d Cir. 2016)…………………………………....…8

*Hallinan v. Republic Bank & Trust Co.*, 519 F.Supp.2d 340, 358 (S.D.N.Y. 2007)…………..38

*Himmelberger v. 40-50 Brighton First Rd. Apts. Corp.*, 943 N.Y.S.2d 118 (App. Div. 2d Dep't 2012)………………………………………………………………………………………………...7

*Ikelionwu v. U.S.*, 150 F.3d 233 (2nd Cir. 1998)……………………………………………………38

*Independent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184 (S.D.N.Y. 1996)………..16

*JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247 (S.D.N.Y. 2005)……………………...34

*In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309 (Bankr. S.D.N.Y. 2001)…………………………9

*In re Kings Falls Power Corp.*, 185 B.R. 431 (Bankr. N.D.N.Y. 1995)………………………....7

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)……………………………………...33

*Kramer v. Greene*, 36 N.Y.S.3d 448 (1st Dept. Aug. 11, 2016)………………………………7, 32

*Magi Communications v. Jac-Lu Associates*, 410 N.Y.S.2d 297 (1st Dept., Nov. 21, 1978)……11

*In re Magnesium Corp. of America*, 399 B.R. 722 (Bankr. S.D.N.Y. 2009)……………………33

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (NY 2011)……………………………...32

*Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp.*, 93 N.Y.2d 584 (NY July 08, 1999)………………………………………………………………………..................8

*Martin Delicatessen v. Schumacher*, 52 N.Y.2d 105 (NY 1981)…………………………………8

*May v. Flowers*, 106 A.D.2d 873 (App.Div. 4th Dept., Dec. 14, 1984)…………………………17

*In re Nanobeak Biotech Inc. v. Central Park Realty Holding Corp.*, 2024 WL 166105 (Bankr. S.D.N.Y. 2024)………………………………………………………………………….………...17, 26

*National Communications Ass'n Inc. v. AT & T Corp.*, 238 F.3d 124, 131 (2nd Cir. 2001)…….37

*Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394 (2nd Cir. 1974)……………………………16, 17

*In re Operations NY LLC.*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013)………………………………23

*Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626 (Bankr. S.D.N.Y. 2009)……17

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)……………………………………………………………………..38, 39

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir 2004)……………………………7

*Rosiny v. Schmidt*, 185 A.D.2d 727 (1st Dept. Aug. 06, 1992)………………………13, 14

*RR Chester, LLC v. Arlington Bldg. Corp.*, 803 N.Y.S.2d 100 (2d Dept., Oct. 17, 2005)………16

*Sabo v. Delman*, 3 N.Y.2d 155 (NY 1957)………………………………………………11

*Sardis v. Frankel*, 113 A.D.3d 135 (1st Dept. 2014)………………………………………7

*In re Singh, ,* 434 B.R. 298 (Bankr. E.D.N.Y. 2010)……………………………………24

*In re Stamps*, 644 B.R. 760 (Bankr. N.D.Ill. 2022)…………………………………....7

*Stonehill Capital Mgt. LLC v. Bank of the W.*, 28 N.Y.3d 439 (NY 2016)……………....8

*In re Swift*, 496 B.R. 89 (Bankr. E.D.N.Y. 2013)………………………………………38, 39

*Tri-Star Pictures, Inc. v. Leisure Time Prod., B.C.*, 17 F.3d 38 (2d Cir. 1994)…………………38

*United States Fire Ins. Co. v. Raia*, 94 A.D.3d 749, 942 N.Y.S.2d 543 (NY 2012)……………17

*Van Bortel v. Ford Motor Company*, 621 F.Supp.3d 380 (W.D.N.Y. 2022)……………………8

*Weiner v. McGraw-Hill, Inc.*, 52 N.Y.2d 458 (NY 1982)………………………………………...8

*Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1985)…………………………9

*Wu v. Uber Tech*, 78 Misc.3d 551 (Sup Ct., Dec. 20, 2022)……………………………………...8

*Yochim v. Mount Hope Cemetery Ass'n*, 623 N.Y.S.2d 80, 163 Misc.2d 1054 (N.Y. City Ct. 1994)……………………………………………………………………………..16

*Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2nd Cir. 2020)………………………17

**Statutes and Rules and other Authorities**                                        **Page**

11 U.S.C. § 101(5)………………………………………………………………45

11 U.S.C. § 105……………………………………………………………………..4

11 U.S.C. § 541………………………………………………………4, 28, 29, 46

11 U.S.C. § 542………………………………………………………4, 28, 29, 46

11 U.S.C. § 544(b)…………………………………………………………………4, 22-23, 41, 46

11 U.S.C. § 548……………………………………………………………………4, 22-23, 41, 46

11 U.S.C. § 550……………………………………………………………4, 23, 28, 29, 41, 43, 44, 46

28 U.S.C. § 157(b)(2)(A), (E) and (H)…………………………………………………………4

28 U.S.C.§ 1334(b)…………………………………………………………………………4

28 U.S.C. § 1408……………………………………………………………………………4

28 U.S.C. § 1409……………………………………………………………………………4

28 U.S.C. § 2201(a)……………………………………………………………………4, 7, 45, 46

Fed. R.Bankr.Pro. 6009……………………………………………………………………4

Fed. R.Bankr.Pro. 7001 et seq………………………………………………………………4, 7

NY CPLR §213(8)……………………………………………………………………………4, 41

NY DCL §§ 273 – 276A…………………………………………………………...4, 23-24, 41-42

NYUVTA §§ 270 – 276-A…………………………………………………4, 24-26, 35-36, 41-43, 47

### PLAINTIFFS'S MEMORANDUM OF LAW IN SUPPORT OF COMPLAINT

26 Bowery LLC and 2 Bowery Holding LLC ("**Plaintiffs**" or "**Debtors**" or "**Bowery Entities**")[2], by and through its counsel, hereby submits this memorandum of law in support of the complaint ("**Complaint**") filed in the above-captioned adversary proceeding against Barbara Mak a/k/a Wai Yuk Barbara Mak ("**Defendant**").  The Complaint asserts 11 claims and related relief against Defendant, who possesses, purportedly pursuant to a written lease ("**B. Mak Lease**")[3], a residential apartment encompassing the third floor ("**26 Bowery 3rd Floor**") of 26 Bowery, New York, NY 10013 (the "**26 Bowery**") a property owned by 26 Bowery LLC.  The B. Mak Lease to the extent it exists, is a one-sided, sweetheart, sham lease that was executed by her brother-in-law (her husband Steven Ng's brother) Wilson Ng, who along with Steven Ng are co-member and managers of the Debtors.  For the reasons set forth below, Plaintiffs submit they are entitled to (1) a declaratory judgment that the B. Mak Lease was void *ab initio*, or alternatively was abandoned, should be rescinded to the extent it was ever valid, or was an actual or constructive fraudulent conveyance, and in each case, the Debtors are entitled to a judgment of possession of 26 Bowery 3rd Floor, and (2) money damages, other compensation and legal fees in an amount to be determined in a future hearing for the harm to the Debtors.  *There Debtors are no longer pursuing Counts VII for conversion or Count X for an accounting against Barbara Mak.  The Debtors do not believe (or have evidence to indicate) that Barbara Mak converted personal property of the Debtors or possesses books, records or documents of the Debtors.  Accordingly, the Debtors withdraw those Counts and they are not addressed herein.*

---

[2] These names are used interchangeably herein but are all included because, for example, the Debtors and Defendant use the term Bowery Entities in the RFAs to avoid confusion about the entities before they were chapter 11 debtors.
[3] As discussed herein, despite being commanded to do so, Barbara Mak has never produced a signed lease for 26 Bowery 3rd Floor.

In support of this Memorandum of Law, Plaintiffs relies on, contemporaneously submits herewith and incorporates by reference, the Declaration of Bryan Ryniker, dated January 29, 2024, and documents referenced therein ("**Ryniker Declaration**").  There are a total of 56 exhibits of which six are unique to this Defendant: "PX1B" (this Defendant's responses to Debtors First Request for Admissions in an Adversary Proceeding ("**RFA**")), "PX2B" (the Complaint against Defendant), "PX3B" (Defendant's Answer to the Complaint), "PX6B" (Ryniker Declaration), PX11B (Debtors First Request for Documents in an Adversary Proceeding ("**Document Requests**"), and PX12B (Debtors First Set of Interrogatories in an Adversary Proceeding ("**Interrogatories**").  All other exhibits are common to the three trials that are scheduled for February 5, 2024 (23-01145 (v. Steven Ng), 23-01150 (v. Barbara Mak) and 23-01152 (v. Hailey Ng) and are labeled "PX1-1" through "PX1-39" (which are the documents that were referenced in the RFAs with the request to admit to their genuineness), and PX4 – PX17.  A summary of the most material admitted facts is set forth below.  The Debtors rely on the Ryniker Declaration, all exhibits there to and referenced above, and upon all documents filed in this adversary proceeding, of which this Court may take judicial notice.

Next and notably, the Defendant failed to respond to the Debtors' Document Requests, dated October 31, 2023, "**PX11B**", and Debtors' Interrogatories of the same date, "**PX12B**".  Accordingly, the Debtors object to the Defendant introducing any evidence at trial that would have been responsive to the Document Requests or the Interrogatories.

In further support of the Complaint, Plaintiffs respectfully represents as follows:

## **FACTS**

1.      The facts in support of the Complaint are too numerous to recite directly in this Memorandum of Law.  Accordingly, Plaintiffs incorporate herein the facts set forth in the

Ryniker Declaration and respectfully refer the Court same and documents attached thereto in support thereof and of the Complaint.

## **SUMMARY OF ADMITTED FACTS**

2.      The Debtors' material evidence against this Defendant is based on the Defendant's own admission of facts, which are set forth in her Answer to the Complaint and in her responses to the Requests for Admissions.  Defendant's admissions are succinct but the Debtors submit sufficient to support a finding that the B. Mak Lease, if one exists, failed for lack of consideration and intent to be bound, or was a fraudulent sham, or was simply mutually abandoned at inception.  The following paragraph sums up the Debtors' assertions that Barbara Mak admitted to but is not all of the Debtors' evidentiary support for its claims.  All citations to evidence are cited to the Ryniker Declaration, which in turn cites to Barbara Mak's RFAs responses (Ex. PX1B) or her Answer (PX3B).

3.      Steven Ng and Wilson Ng purportedly entered into a lease with Barbara Mak, the wife of co-member Steven Ng and sister in law of Wilson Ng who purportedly executed the B. Mak Lease but Barbara Mak never produced a signed or even a complete lease and, further, Wilson Ng also entered into a lease with his brother William Ng.[4]  (Ryn.Decl. ¶¶12, 25, 77, 79, 86, 98-99, 101, 12, 123, 144, 159, 172, 207-211, 224, 228, 244, and 249).  Barbara Mak did not pay rent and there is no evidence she ever paid rent, nor did she pay her security deposit as recited in the B. Mak Lease and there is no evidence that she ever paid the security deposit. (*Id.* ¶¶219-223.)  At least one other lease offered to a family member, insider between April 26, 2019 and the Petition Date was not on market terms.  (*Id.* ¶126.)  The terms of Barbara Mak's

---

[4] The evidence shows and, indeed the Debtors believe it is undisputed that Wilson Ng and Steven Ng entered into leases with 10 family members covering 11 of the Debtors' 14 residential and commercial units.  They are not discussed here because this section focuses on admitted material facts.  Other than the William Ng lease, the Defendant Barbara Mak did not admit to the existence of any other leases except her own, which as noted, she never produced.

insider purported lease were never enforced and no nonpay proceedings were ever commenced against Barbara Mak. (*Id.* ¶¶28, 216-217.) 2 Bowery and 26 Bowery were valuable properties. (*Id.* ¶12.). Finally, Barbara Mak did not deny in her answer (and is therefore pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure ("**FRCP**"), is deemed to admit) that this Court's contempt finding against her reflected an attempt by Defendant to conceal facts related to the Barbara Mak Lease and other financial transactions of the 26 Bowery LLC and 2 Bowery Holding LLC. (*Id.* ¶389.). All of the foregoing supports a finding that Barbara Mak has not shown proof she has or ever had a signed lease and the purported B. Mak Lease, if it actually exists, was (i) void *ab initio*, or (ii) was voidable as a sham lease, or (iii) was abandoned by the clear conduct of the lease parties, or (iv) should be rescinded for lack of consideration or fraud or (v) is voidable as an actual or constructive fraudulent conveyance. Finally, the evidence above supports a finding by this Court that the Defendant owes use and occupancy since at least April 26, 2019 in an amount to be determined at a separate hearing, and damages for fraud and unjust enrichment. Accordingly, the Debtors request entry of an order granting the relief set forth in Counts I, II, III, IV, V, VI, VIII, IX, and X and such other relief as the Court deems appropriate.

### **JURISDICTION**

4.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C.§ 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (H). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334. The statutory predicates for relief include 28 U.S.C. § 2201(a), 11 U.S.C. §§ 105(a), 541, 542, 544(b), and §550, NY DCL §§273 – 276A, NYUVTA §§ 270 – 276-A, New York common law and Rules 6009 and 7001 et seq. of the Federal Rules of Bankruptcy Procedure.

## **ARGUMENT**

5.      The Complaint sets forth the prima facie grounds for a determination by this

Court that the Debtors are entitled to the following relief:  (1) in Count I, a declaratory judgment

that the B. Mak Lease, to the extent it exists, is void *ab initio* and that the Debtors are entitled to

entry of an immediate judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction

or writ of assistance granting immediate possession and execution thereon; (2) in Count II, a

declaratory judgment that the B. Mak Lease, to the extent it exists, is rescinded and that the

Debtors are entitled to entry of an immediate judgment of possession of 26 Bowery 3rd Floor

with a warrant of eviction or writ of assistance granting immediate possession and execution

thereon; (3) in Count III, an order and judgment avoiding the B. Mak Lease, to the extent it

exists, as an actual or constructive fraudulent conveyance and entry of an immediate judgment of

possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance granting

immediate possession and execution thereon, and a determination of liability for damages in an

amount to be determined at a separate inquest; (4) in Count IV, to the extent that this Court

avoids any transactions including but not limited to the B. Mak Lease, an order and judgment

directing Barbara Mak to pay the value of transfers in an amount to be determined at a separate

inquest; (5) in Count V, to the extent that the Court determines that Barbara Mak is in

possession, custody or control of any property of these estates, an order and judgment directing

the turnover of such property to the Debtors; (6) in Count VI, and order and judgment for

monetary damages against Barbara Mak for prepetition and postpetition use and occupancy in an

amount to be determined at a separate inquest; (7) in Count VIII, an order and judgment finding

Barbara Mak was unjustly enriched at the expense of the Debtors and directing Barbara Mak to

compensate the Debtors for damages in an amount to be determined at a separate inquest; (8) in

Count IX, an order and judgment finding that Barbara Mak engaged in a civil conspiracy for the

purpose of hindering, delaying or defrauding creditors and the Debtors and directing Barbara

Mak to compensate the Debtors for damages in an amount to be determined at a separate inquest;

(9) in Count X, an order and judgment finding that Barbara Mak actually or constructively

hindered, delayed or defrauded the Debtors and creditors of the Debtors and directing Barbara

Mak to pay the Debtors' legal fees in an amount to be determined at a separate inquest; (10) an

order and judgment dismissing or denying of all affirmative defenses asserted by Defendant; and

finally (11) grant such other and further relief and this Court deems just and proper.

### A. On Count I, The Court Should Enter A Declaratory Judgment That The B. Mak Lease Is Void *Ab Initio* And Grant The Requested Relief.

6.        Defendant Barbara Mak has never produced a signed lease for 26 Bowery 3rd

Floor or any unit and, to the extent one exists, Plaintiffs' proof demonstrates that the B. Mak

Lease failed to form a contract binding against the Debtors.  Alternatively, to the extent that the

Court determines that the B. Mak Lease was an enforceable contract on its face, the Court should

permit parol evidence to demonstrate that the B. Mak Lease was a fraudulent sham lease that was

never intended to be enforced.  Finally, to the extent that the B. Mak Lease, even at the moment

of inception, formed a binding agreement between managing member Wilson Ng and his sister-

in-law Barbara Mak, the Court should determine that the lease was immediately abandoned by

both lease parties.  Accordingly, for the reasons set forth below, the Court should find that the B.

Mak Lease, to the extent it exists, was void *ab initio* or was abandoned and that the Plaintiffs are

entitled to entry of an immediate judgment of possession of 26 Bowery 3rd Floor with a warrant

of eviction or writ of assistance granting immediate possession and execution thereon.  Plaintiffs

therefore request entry of a judgment granting the relief set forth in Count I of the Complaint.

### *Declaratory Judgment*

7.        28 U.S.C. § 2201(a) provides as follows (in relevant part):

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  This Court has the authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a). *In re Stamps*, 644 B.R. 760, 765 (Bankr. N.D.Ill. 2022); *In re Kings Falls Power Corp.*, 185 B.R. 431, 436 (Bankr. N.D.N.Y. 1995); *see also* Fed.R.Bankr.Pro. 7001(9)(adversary proceedings including "a proceeding to obtain a declaratory judgment").

**The B. Mak Lease Failed to Form An Enforceable Contract**

8.     Barbara Mak has never produced a signed lease for 26 Bowery 3rd Floor or any unit.  To the extent one exists, the Debtors submit that the B. Mak Lease failed to form a contract binding on the Debtors.

*General Contract Principles*

9.     Under applicable New York state law, leases are interpreted according to general contract law principles.  *Himmelberger v. 40-50 Brighton First Rd. Apts. Corp.* 943 N.Y.S.2d 118, 118 (App. Div. 2d Dep't 2012)(citing *George Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 217 (NY 1978)).  "A contract requires an offer and acceptance thereof (mutual assent), consideration, and an intent to be bound." *In re Celsius Network LLC*, 647 B.R. 631, 648 (Bankr. S.D.N.Y. 2023)(citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (reciting the requirements for formation of a contract).  "The party seeking to enforce an alleged contract bears the burden of establishing the contract to be enforced."  *Celsius Network LLC*, 647 B.R. at 650; *see also Kramer v Greene*, 36 N.Y.S.3d 448, 450 (1st Dept. Aug. 11, 2016)( "[T]he party seeking to enforce the contract bears the burden at trial to establish that a binding agreement was made and to prove its terms . . ." )(citing *Sardis v. Frankel*, 113 A.D.3d 135, 144 (1st Dept. 2014).

10.      "The first and most obvious element, then, is the existence of a contract, *i.e.*, an enforceable, *mutually binding agreement*." *Van Bortel v. Ford Motor Company*, 621 F.Supp.3d 380, 386 (W.D.N.Y. 2022)(emphasis added).  "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Matter of Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 N.Y.2d 584, 589 (NY July 08, 1999) (citing *Martin Delicatessen v Schumacher*, 52 NY2d 105, 109 (NY 1981)).  "The parties' objective manifestations of assent, viewed within the totality of the surrounding circumstances, are determinative of the contract-formation question." *Wu v Uber Tech.*, 78 Misc. 3d 551, 585–86 (Sup Ct., Dec. 20, 2022) (citing *Stonehill Capital Mgt. LLC v Bank of the W.,* 28 NY3d 439, 448-449 (NY 2016).  "Such manifestations may be expressed through a party's written or spoken words, silence, or conduct, so long as the party "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Wu v Uber Technologies*, 78 Misc. 3d at 586 (internal cites omitted.)

11.      Next, "[t]he New York Court of Appeals has described the presence of consideration as "a fundamental requisite" of a binding contract." *Van Bortel v. Ford Motor Company*, 621 F.Supp.3d 380, 386 (W.D.N.Y. 2022)(citing *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 464 (NY 1982); *see also Greenberg v. Greenberg*, 646 F.App'x 31, 32 (2d Cir. 2016) ("The law is well settled that in order for a promise to be enforceable as a contract, the promise must be supported by valid consideration") (internal quote omitted).  "A contract must also be supported by 'consideration.' This requirement is not exacting—each party must simply receive "something of value." *Celsius Network LLC*, 647 B.R. at 650 (citing *Apfel v. Prudential-Bache Secs. Inc.*, 616 N.E.2d 1095, 1097 (NY 1993) (observing that anything with "real value in the eye of the law" can serve as consideration)(internal cite omitted)).

12.    Finally, "[i]t is a fundamental principle of contract law that no contract can be formed unless the parties intend to be bound." *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 324 (Bankr. S.D.N.Y. 2001)(citing *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir.1985); *In re Atlantic Computer Systems Inc.*, 142 B.R. 659, 660 (Bankr. S.D.N.Y.1992).

13.    Here, it is undisputed that the parties to the B. Mak Lease are statutory insiders and Wilson Ng, who is Barbara Mak's brother-in-law (as the wife of Steven Ng, Wilson Ng's brother), and is the managing member of the Debtors who executed the B. Mak Lease on January 1, 2021. (PX6B Ryn.Decl. ¶12 (Wilson Ng managing member), ¶¶26, 77, 207, 211 (Barbara Mak and Wilson Ng insiders); ¶212 and PX1-24 (Barbara Mak and Wilson Ng signed B. Mak Lease).)  The Debtors do not dispute that signatories Barbara Mak and Wilson Ng mutually assented to the purported lease.  Indeed, as explained in the civil conspiracy Count IX below, the Debtors submit that the mutual assent of the parties constituted one of the overt acts in furtherance of a civil conspiracy to defraud the Debtors.  The B. Mak Lease however failed to form an enforceable lease because it was not supported by any consideration *and* neither party intended to be bound by the express terms thereof.  Therefore, the Court should rule that the B. Mak Lease was void *ab initio* and is not binding on the Debtors.

14.    The following admitted facts support of a finding that (i) even though Barbara Mak admittedly received a valuable leasehold, the B. Mak Lease was not supported by *any consideration of any value* from her, and (ii) that neither party thereto intended to be bound by the terms thereof.  The Defendant admits that 2 and 26 Bowery are "valuable" property interests of the Bowery Entities, (PX6B Ryn.Decl. ¶12, ¶315 (Barbara Mak admits she received substantial value in the form of leasehold), essential business assets (PX6B Ryn.Decl. ¶24), and a valuable potential source of income.  (PX6B Ryn.Decl. ¶218, 315).)  Giving of valuable lease space without collecting rents would be so one sided as to render such a transaction

unconscionable.  (PX6B Ryn.Decl. ¶23.) Barbara Mak never paid rent or the recited security

deposit as required by the Barbara Mak Lease.  (PX6B Ryn.Decl. ¶¶219, 222 (Defendant admits

she did not pay rent or security deposit), ¶220, 223 (Defendant admits there is no documentary

evidence that she paid rent or security deposit).)  The Barbara Mak Lease was not on market

terms and, in fact, the rent was both below market. (PX6B Ryn.Decl. ¶213 (below market rent),

¶214 (not market terms).)  The Barbara Mak Lease was never enforced with the commencement

of non-pay proceedings were ever commenced against nonpaying family members like Barbara

Mak.  (PX6B Ryn.Decl. ¶¶28 (Def. admits no nonpay proceedings commenced), ¶217 (Def.

admits never enforced).)  Barbara Mak never registered the utilities in her name as required by

the Barbara Mak Lease and there is no evidence that she ever paid for utility services.  (PX6B

Ryn.Decl. ¶221 (Def. admits did not register utilities), PX1-24 ¶6 (Barbara Mak Lease requires

tenant to pay for and arrange for utility services).)  There is no evidence that shows Barbara Mak

used 26 Bowery 3rd Floor as solely as her primary residence as expressly required by the

Barbara Mak Lease and the opposite is true in that she admits to using part of that apartment for

"storage" or "commercial" purposes.  (PX6B Ryn.Decl. ¶216 (Def. admits she uses part of 26

Bowery 3rd Floor for storage or commercial purposes), PX1-24 ¶1 (requiring use only as

primary residence).)  In short, from the date it was executed, Barbara Mak failed to abide by any

material term of the Lease and neither Steven Ng nor Wilson Ng enforced it on behalf of the

Debtors.  Therefore, the B. Mak Lease lacked consideration and only reasonable conclusion from

the abject failure to enforce it was that they never intended to be bound by its terms.

Accordingly, the Court should conclude the B. Mak Lease, if one exists, was void *ab initio*.

### Parol Evidence Should be Permitted to Establish that the B. Mak Lease Was a Sham

15.     Alternatively, to the extent that the Court determines that the B. Mak Lease exists

and was on its face binding, the Court should consider evidence of the conduct of the lease

parties, which establishes that the B. Mak Lease was a sham contract that was never intended to be performed.

***Parol Evidence to Demonstrate Sham Contract***

16.    Despite the existence of a merger clause in a lease, parol evidence may be offered to prove fraud in the inducement or execution of the contract. *Magi Communications v Jac-Lu Associates*, 410 N.Y.S.2d 297, 299 (1st Dept., Nov. 21, 1978)("where . . . the agreement contains only a general merger clause, proof by parol may be offered to establish either fraud in the inducement or fraud in the execution."  "The parol evidence rule has no application in a suit brought to *rescind* a contract on the ground of fraud." *Adler & Shaykin v. Wachner*, 721 F.Supp. 472, 479 (S.D.N.Y. 1988)(emphasis in original)(citing *Sabo v. Delman,* 3 N.Y.2d 155, 161, (NY 1957). "In short, a contractual promise made with the undisclosed intention not to perform it constitutes fraud and, despite the so-called merger clause, the plaintiff is free to prove that he was induced by false and fraudulent misrepresentations ..." *Id.* at 480(internal cite omitted); *see also Bersani v General Acc. Fire & Life Assur. Corp., Ltd.*, 36 N.Y.2d 457, 460–61 (N.Y. May 05, 1975)("the weight of authority is to the effect that parol evidence is admissible, as between the parties to a written agreement and their privies, to show that a writing which purports to be a contract *is not a contract but a sham* to further a plan to induce a third party to enter into it or to take or refrain from taking some affirmative action[.]")(emphasis added)(internal cites omitted).

17.    The Debtors alleged that the B. Mak Lease, if it exists, was a fraudulent sham and parol evidence demonstrates that.  The Lease was never binding because, among other things, it was never supported by any consideration of any value.  Indeed, it was completely one-sided conferring an admittedly valuable asset on the Defendant, (PX6B Ryn.Decl. ¶12, ¶315 (Barbara Mak admits she received substantial value in the form of leasehold), essential business assets (PX6B Ryn.Decl. ¶24), and a valuable potential source of income.  (PX6B Ryn.Decl. ¶218,

315)), without the Bowery Entities receiving anything in return, (PX6B Ryn.Decl. ¶¶219, 222 (Defendant admits she did not pay rent or security deposit), ¶220, 223 (Defendant admits there is no documentary evidence that she paid rent or security deposit)), which the Defendant submits is per se unconscionable. (PX6B Ryn.Decl. ¶23.) The material facts are undisputable and in fact are admitted. Accordingly, this Court can find that based on the fraud exception to the parol evidence rule, the Court should consider evidence of the parties' intentions not to perform by looking at the facts as they existed on the date the B. Mak Lease was signed and the conduct thereafter.

18.     For example, the Court can conclude fraud from the very inception of the B. Mak Lease, if it exists, because on the day it was purportedly executed it falsely stated that a $3,500.00 security deposit was paid, when it is admitted that no such security deposit was ever paid or deposited in the bank. (PX6B Ryn.Decl. ¶¶220, 223, PX1-24 ¶5 (false stating that tenant has given security to the landlord and landlord has deposit it in the bank, both of which are false statements).) The Defendant admits that the Lease is a business record, (PX6B Ryn.Decl. ¶211), and the record is thus clear that it was false from inception because of the false statements about the security deposit. The Barbara Mak Lease was not on market terms and, in fact, the rent was both below market and not on market terms. (PX6B Ryn.Decl. ¶213 (below market rent), ¶214 (not market terms).) (PX6B Ryn.Decl. ¶¶28 (Def. admits no nonpay proceedings commenced), ¶217 (Def. admits never enforced).) Barbara Mak never registered the utilities in her name as required by the Barbara Mak Lease and there is no evidence that she ever paid for utility services. (PX6B Ryn.Decl. ¶221 (Def. admits did not register utilities), PX1-24 ¶6 (Barbara Mak Lease requires tenant to pay for and arrange for utility services).) In fact, Barbara Mak's Con Edison service remains registered in the name of Tien Yick Co., Inc, the predecessor of 26 Bowery LLC. (*See* PX15 (Con Edison statements showing 26 Bowery 3rd Floor registered to

Tien Yick at Bates No. PX15-000032 "05 3FL TIEN YICK CO INC").).  There is no evidence

that shows Barbara Mak used 26 Bowery 3rd Floor as solely as her primary residence as

expressly required by the Barbara Mak Lease and the opposite is true in that she admits to using

part of that apartment for "storage" or "commercial" purposes.  (PX6B Ryn.Decl. ¶216 (Def.

admits she uses part of 26 Bowery 3rd Floor for storage or commercial purposes), PX1-24 ¶1

(requiring use only as primary residence).)  Neither Barbara Mak, Steven Ng, nor Wilson Ng

ever enforced the terms of the Barbara Mak Lease, particularly the complete nonpayment of rent.

(PX6B Ryn.Decl. ¶¶28, ¶217 (non nonpay, Lease not enforced).)  In short, from the date it was

executed with false terms, Barbara Mak failed to abide by any material term of the Lease and

neither Steven Ng nor Wilson Ng enforced it on behalf of the Bowery Entities.  Accordingly, it is

appropriate here to consider parol evidence to establish that the B. Mak Lease, if it exists, was

fraudulent and misrepresented the fact that Barbara Mak was not actually a rent paying tenant.

**The B. Mak Lease, If Ever Enforceable, was Abandoned**

19.     If the B. Mak Lease exists, and even if it was momentarily enforceable, it was

abandoned by the parties immediately upon executing it.  From inception of the B. Mak

Lease, the course of conduct of the parties thereto demonstrates that.

***Abandonment of Contract***

20.     Contracts may be abandoned by the conduct of the parties.  "To establish

abandonment of a contract by conduct, it must be shown that the conduct is mutual, positive,

unequivocal, and inconsistent with the intent to be bound."  *Rosiny v Schmidt*, 185 A.D.2d

727, 732 (1st Dept. Aug. 06, 1992) (citing *Benson v. RMJ Sec. Corp.,* 683 F.Supp. 359, 374

(S.D.N.Y. 1988).  "The party who asserts abandonment has the burden of establishing it

since the termination of a contract is not presumed (*Id.* at 732).

21.      The facts supporting the conclusion that Barbara Mak and Wilson Ng

abandoned the B. Mak Lease cannot be and, indeed, are not disputed here.  Their

abandonment of its terms was mutual in that neither Wilson Ng nor Barbara Mak ever

enforced its terms. Their abandonment of its terms was mutual in that neither Wilson Ng nor

Barbara Mak ever enforced its terms.  Their abandonment started with the complete

abandonment of the recited requirement to pay the security deposit.  (PX6B Ryn.Decl. ¶¶220,

223, PX1-24 ¶5 (false statement in B. Mak Lease that tenant has given security to the

landlord and landlord has deposit it in the bank, both of which are false statements).)

Further, the abandonment is reflected in the positive conduct of both parties in that Barbara

Mak never paid the rent, (PX6B Ryn.Decl. ¶¶219, 222 (Defendant admits she did not pay

rent), never registered the utilities in her name as required by the Barbara Mak Lease, (PX6B

Ryn.Decl. ¶221, PX1-24 ¶6), did not use 26 Bowery 3rd Floor solely as her primary

residence as required by the Barbara Mak Lease. (PX6B Ryn.Decl. ¶216, PX1-24 ¶1

(requiring use only as primary residence).)  And finally, Wilson Ng did not enforce the

requirements of the Lease by commencing non-pay proceedings against Barbara Mak.

(PX6B Ryn.Decl. ¶¶28, ¶217.)  These failures to treat the Lease as binding "were

unequivocal and inconsistent with the intent to be bound." *Rosiny*, 185 A.D.2d at 732.  For

all of the foregoing reasons, Plaintiffs therefore request entry of a judgment granting the

relief set forth in Count I of the Complaint.

**B.  On Count II, The Court Should Enter A Declaratory Judgment That The B.
Mak Lease Is Rescinded And Grant The Requested Relief**

22.      Plaintiffs proof demonstrates that the B. Mak Lease, if it exists, should be

rescinded to the extent it was ever valid.  Here, the Debtors lack an adequate remedy at law

because 26 Bowery 3rd Floor leasehold constitutes a discreet and unique leasable space in the 26

Bowery property and the possessory relief requested can only be afforded through rescission and

a turnover of possession.[5]  A complete failure of consideration, fraud, and breach of fiduciary

duty—all found here—are all grounds to rescind the B. Mak Lease.  The lack of any payment of

rent or security deposit under the B. Mak Lease reflect a complete failure of consideration.  The

false terms of the Lease including the false statement that the security deposit was paid, the

timing of entering into such lease while admittedly insolvent, and the complete failure to enforce

the Lease all evinced fraud.  Finally, the admitted insider, manager, and Defendant's brother-in-

law, Wilson Ng, breached his fiduciary duty to the Debtors in entering into the below market B.

Mak Lease in the first place, (PX6B Ryn.Decl. ¶213 (below market rent), ¶214 (not market

terms).), falsifying the B. Mak Lease, (PX6B Ryn.Decl. ¶¶220, 223, PX1-24 ¶5 (false statement

that tenant has given security to the landlord and landlord has deposit it in the bank)), which

Lease is a business record of the Bowery Entities, (PX6B Ryn.Decl. ¶211), and then failing to

enforce its terms.  (PX6B Ryn.Decl. ¶¶28, ¶217.)  The result of the B. Mak Lease was an

unconscionable agreement that surrendered a valuable asset, an essential business asset, and

potential source of income of the Debtors, (PX6B Ryn.Decl. ¶¶12, 24, 218, 315), to an insider,

(PX6B Ryn.Decl. ¶¶26, 77, 207, 211), for no consideration, (PX6B Ryn.Decl. ¶¶219, 220, 222,

223, all while the Debtors were failing to pay their debts as they came due. (*See* Ryn.Decl., ¶215

(citing PX4 (historical tax bills), PX5 (historical water bills), (PX16 (Bowery Mezz LLC proof

of claim showing default and arrears).)  In short, the B. Mak Lease harmed the Debtors.

Accordingly, the Court should rescind the B. Mak Lease and enter an immediate judgment of

possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance granting

---

[5] The Debtor requests an order voiding the B. Mak Lease in Count I.  Voiding the Lease would not impair the
Debtors' right to seek use and occupancy from Defendant.  To the extent the Court does not void but rescinds the B.
Mak Lease and an election of remedies is required, the Debtors waive their right to damages arising from his use and
occupancy of the 26 Bowery 3rd Floor during the period the Lease was purportedly in effect, from January 1, 2021
through February 28, 2024, when its term expires.

immediate possession and execution thereon. Plaintiffs therefore requests entry of a judgment granting the relief set forth in Count II of the Complaint.

23.     Under New York law, rescission is available as a remedy where there has been, among other things, a complete failure of consideration, fraud, or a breach of fiduciary duty, all present here.  A "[f]ailure of consideration exists wherever one who has promised to give some performance fails without his or her fault to receive in some material respect the agreed quid pro quo for that performance.  Failure of consideration gives the disappointed party the right to rescind the contract." *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1199 (S.D.N.Y. 1996) (citing *Fugelsang v. Fugelsang,* 517 N.Y.S.2d 176, 177 (2d Dept.1987). "Where a plaintiff has received little or nothing of value, recission based upon failure of consideration is warranted." *Id.* (citing *Yochim v. Mount Hope Cemetery Ass'n,* 623 N.Y.S.2d 80, 82, 163 Misc.2d 1054 (N.Y. City Ct.1994)). "As a general rule, rescission of a contract is permitted 'for such a breach as substantially defeats its purpose.  It is not permitted for a slight, casual, or technical breach, but ... only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.'"  *RR Chester, LLC v Arlington Bldg. Corp.*, 803 N.Y.S.2d 100, 101 (2d Dept., Oct. 17, 2005).

24.     Further, "[a] showing of fraud would certainly be grounds for rescission."  *Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1397 (2nd Cir. 1974).  In assessing the circumstances, courts consider the "badges of fraud," which include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

(6) the general chronology of the event and transactions under inquiry;

(7) a questionable transfer not in the usual course of business; and

(8) the secrecy, haste, or unusualness of the transaction.

*In re Nanobeak Biotech Inc. v. Central Park Realty Holding Corp.*, 2024 WL 166105, at *10–11 (Bankr. S.D.N.Y. 2024)(citing *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009)).

25.    And finally, a breach of fiduciary duty is also grounds for rescission.  *Ajettix Inc. v Raub*, 804 N.Y.S.2d 580, 597, 9 Misc. 3d 908, 925, 2005 N.Y. Slip Op. 25366, 2005 WL 2140174 (Sup Ct, July 26, 2005)(rescission of stock and releases where defendant breached his fiduciary duty to company); *see also May v Flowers*, 106 A.D.2d 873, 874 (App.Div. 4th Dept., Dec. 14, 1984)(affirming rescission of assignment entered into in violation of fiduciary duty).  ""To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2nd Cir. 2020)(citing *United States Fire Ins. Co. v. Raia*, 94, A.D.3d 749, 942 N.Y.S.2d 543, 545 (NY 2012)).

26.    Here, there has admittedly been a complete failure of consideration under the B. Mak Lease, if it exists.  This, without anything else, is grounds for rescission.  *See Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1397 (2nd Cir. 1974).  The Second Circuit explained in a case of a publisher who failed to make any royalty payments:

> Rescission has also been allowed, despite the absence of any showing of fraud, in cases in which a publisher has made none of the royalty payments.  The rationale of these decisions is, of course, that an essential objective of a contract between a composer and publisher is the payment of royalties, and a complete failure to pay means this objective has not been achieved.

*Id.*  Here, the essential objective of the B. Mak Lease to the Bowery Entities was the payment

and collection of rents was and that objective was not achieved.  Therefore, rescission is

warranted.

27.     Further, the B. Mak Lease transaction bears numerous badges of fraud.  For

example, it completely lacked consideration and enforcement of its terms including payment of

rent, use as a primary residence, payment of security deposit, registration of utilities, and

enforcement of terms by the Bowery Entities.  (*See* PX6B Ryn.Decl. ¶¶23 (unconscionable not to

collect rent), 219 (failure to rent), ¶220 (failure to security), ¶222 (failure to rent), ¶223 (failure

to security), ¶213 (below market rent), ¶214 (not market terms), ¶¶28 (no nonpay proceedings),

¶217 (Lease never enforced), ¶221 (utilities registered), PX1-24 ¶6 (Lease requires tenant to pay

for and arrange for utility services), ¶216 (apartment partly used for storage or commercial

purposes), PX1-24 ¶1 (requiring use only as primary residence).)  Next, it was between admitted

insiders who were manager to the Bowery Entities and his sister-in-law.  (*See* PX6B Ryn.Decl.

¶¶26, 77, 207, 211 (Barbara Mak and Wilson Ng insiders, Wilson Ng manager).  Thus, the B.

Mak Lease transaction kept the apartment, 26 Bowery 3rd Floor, within the possession and use

of related family members one of whom owed a fiduciary duty to the Bowery Entities.  (PX6B

Ryn.Decl. ¶¶21 (Wilson Ng fiduciary duty), 387, 388 (acknowledging the duty of a fiduciary).)

28.     At the time of the purported B. Mak Lease transaction, the Bowery Entities were

admittedly in poor financial condition including failing to pay their mortgages, real estate taxes,

utility bills, insurance and other debts as they came due.  (*See* Ryn.Decl., ¶215; see also PX4

(historical tax bills), PX5 (historical water bills), (PX16 (Bowery Mezz LLC proof of claim

showing default and arrears). In fact, the B. Mak Lease was just one of ten other leases that

Wilson Ng and Steven Ng entered into with related family members and insiders after incurring

$8.6 million in debt, experiencing a failure to pay debts as they came due between July 1, 2019

and the Petition Date.  (PX6B Ryn.Decl. ¶84 (Megne Yong Lease 1/12/22), ¶99 (William Ng Lease 2/1/21), ¶121 (Hailey Ng Lease 3/1/21), ¶141 (Steven Ng Lease 5/1/21), ¶161 (D. Tam Lease 7/1/21); ¶173 (Jenny Ng 7/1/21); ¶193 (Anna Kam 8/23/21), ¶208 (Barbara Mak 1/1/21); ¶226 (Cody Ng 5/1/21) and ¶246 (Mimin Ng 9/1/20); *see also* PX6B Ryn.Decl. ¶¶ 44, 47-57, 60-64, 148, 338, 340, 343, 346, 350, 354, 370-373 (collectively evidencing the failure of the Bowery Entities to pay their debts as they were coming due).

29.     Further the B. Mak Lease was a questionable transfer in that it was not in the usual course of business because it was between insiders with no external oversights, ¶308 (Bowery Entities had no disinterested member or party to oversee insider transactions), admittedly was a below market rent lease and not on market terms, (PX6B Ryn.Decl. ¶213 (below market rent), ¶214 (not market terms)), that did not enforce the actual payment of the recited security deposit and its material terms were never enforced. (PX6B Ryn.Decl. ¶¶28 (Def. admits no nonpay proceedings commenced), ¶217 (Def. admits never enforced); PX1-19 ¶¶1 (primary residence), 3, (rent), 5 (security), 6 utilities).)  Finally, the B. Mak Lease was an unusual transaction in that it secretly reduced the rent from the rent Wilson Ng certified on the 26 Bowery Certified Rent Roll given to the prepetition lenders to induce the $8.6 million loans. (PX6B Ryn.Decl. ¶¶78 (inaccurate as to Barbara Mak), ¶210 (rent in B. Mak Lease substantially less than rent in 26 Bowery Certified Rent Roll).)  The 26 Bowery Certified Rent Roll was a business record of the Bowery Entities, (PX6B Ryn.Decl. ¶73), and it was falsified. (PX6B Ryn.Decl. ¶78 (admitting that 26 Bowery Certified Rent Roll was inaccurate).)  In short, virtually all of the badges of actual fraud are present here providing ample grounds to rescind the B. Mak Lease on the basis of fraud.

30.     Finally, Wilson Ng and Barbara Mak are admittedly insiders (PX6B Ryn.Decl. (PX6B Ryn.Decl. ¶12 (Wilson Ng managing member), ¶¶26, 77, 207, 211 (Barbara Mak and

Wilson Ng insiders); ¶212 and PX1-24 (Barbara Mak and Wilson Ng signed B. Mak Lease).)

Wilson breached his fiduciary duty to the Bowery Entities in innumerable ways including: **(i)**

entering into a lease with an insider family member, (PX6B Ryn.Decl. ¶12 (Wilson Ng

managing member), ¶¶26, 77, 207, 211 (Barbara Mak and Wilson Ng insiders); ¶212 and PX1-

24 (Barbara Mak and Wilson Ng signed B. Mak Lease)), without external oversights, ¶308

(Bowery Entities had no disinterested member or party to oversee insider transactions), and then

failing to require adequate consideration, ¶¶219, 222 (no rent or security deposit), ¶220, 223 (no

documentary evidence of rent or security deposit), and did not enforce of the Lease terms such as

rent provision, security deposit, utility payment and registration, and primary residence, (PX6B

Ryn.Decl. ¶¶28 (Def. admits no nonpay proceedings commenced), ¶217 (Def. admits never

enforced).), **(ii)** when it was known that the Bowery Entities were admittedly in poor financial

condition including failing to pay their mortgages, real estate taxes, utility bills, insurance and

other debts as they came due, (*see* Ryn.Decl., ¶215 (citing PX4 (historical tax bills), PX5

(historical water bills), (PX16 (Bowery Mezz LLC proof of claim showing default and arrears),

¶84 (Megne Yong Lease 1/12/22), ¶99 (William Ng Lease 2/1/21), ¶121 (Hailey Ng Lease

3/1/21), ¶141 (Steven Ng Lease 5/1/21), ¶161 (D. Tam Lease 7/1/21); ¶173 (Jenny Ng 7/1/21);

¶193 (Anna Kam 8/23/21), ¶208 (Barbara Mak 1/1/21); ¶226 (Cody Ng 5/1/21) and ¶246

(Mimin Ng 9/1/20); *see also* PX6B Ryn.Decl. ¶¶ 44, 47-57, 60-64, 148, 338, 340, 343, 346, 350,

354, 370-373 (collectively evidencing the failure of the Bowery Entities to pay their debts as

they were coming due), **(iii)** failing to assure that all leases to family members were entered into

with independent oversight and on market terms, (Ryn.Decl.,¶308 (Bowery Entities had no

disinterested member or party to oversee insider transactions), **(iv)** failing to enforce leases with

family members, (Ryn.Decl.,¶¶217 (Barbara Mak Lease not enforced)], **(v)** there is no evidence

that Wilson Ng or Steven Ng maintained adequate books and records or were knowledgeable

about the Bowery Entities, (PX6B Ryn.Decl. ¶320 (PX17, Wilson Ng testifying a Debtor lacked

books and records, did transactions in cash and lacked an accountant or bookkeeper), **(vi)** failing

to observe corporate formalities, (*see e.g.*, PX6B Ryn.Decl. ¶¶, 344, 345 (commingly personal

and Bowery Entity funds, ¶350 (commingling rents by depositing same into personal bank)),

**(vii)** failing to strictly deposit rents into Debtor accounts (PX6B Ryn.Decl. ¶318 (Defendant

admitting that to the extent any rent was paid it was paid in cash and not deposited into Bowery

Entities account), ¶332 (holding rents in cash and not depositing same), ¶345, 348 (rents from

non-insiders deposited into personal accounts), **(viii)** creating false business records, (PX6B

Ryn.Decl. ¶¶220, 222 (Defendant admitting that recited security deposit in PX1-24 ¶5 was not in

fact made), **(ix)** failing to close bank and utility accounts in the name of defunct prior corporate

entities and continuing to use such accounts even though the Bowery Entities had their own bank

accounts (PX6B Ryn.Decl. 345, Px1-27 (old company bank accounts remained open and used),

¶337 (utility accounts remained open): *see also* PX1-27 (bank accounts of Chouk King Co. (*see

e.g.*, Ng - 2004 Prod 00405 - Ng - 2004 Prod 00624) and Tien Yick (*see e.g.*, Ng - 2004 Prod

00633 - Ng - 2004 Prod 00677) accounts still in use years after the Bowery Entities acquired 2

and 26 Bowery; PX1-29 (Con Edison bills still in name of Chouk King Co. and Tien Yick

through 2022), PX1-38 (deposit of Kawoo Lok rent into Chouk King Co. bank account (*see e.g.*,

PX1-38-000014), and **(x)** commingling Bowery Entity funds with personal funds (PX6B

Ryn.Decl. ¶345 (commingling business with personal funds).). In each of the foregoing ways,

Wilson Ng and Steven Ng breached their fiduciary duty.  The unenforced leases, including the B.

Mak Ng Lease cost the Bowery Entities hundreds of thousands of dollars collectively in

uncollected rents.  Steven Ng's and Wilson Ng's failure to collect rent resulted in their inability

to pay the Bowery Entities debts as they came due resulted in hundreds of thousands of dollars of

interest debt and charges.  In each way, the Bowery Entities were indisputably harmed, and in

particular harmed particular with the execution of no-consideration leases like the B. Mak Lease.
Accordingly, the B. Mak Lease should be rescinded and the Court should enter an immediate
judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance
granting immediate possession and execution thereon.

### C. On Count III, the Court Should Enter an Order Avoiding the B. Mak Lease as an Actual or Constructive Fraudulent Conveyance and Grant the Requested Relief.

31.    Plaintiffs proof demonstrates that the B. Mak Lease, if it exists, was an actual
fraudulent conveyance that the Court should avoid.  Even if the Court determines that the B. Mak
Lease was not an actual fraudulent conveyance, it is indisputable that it was a constructive
fraudulent conveyance in which (i) an admittedly valuable business asset was transferred to an
insider for no consideration, (ii) while the Debtors were insolvent and not paying the debts as
those debts came due, (iii) while the Debtors had unreasonably small capital, and (iv) when
Steven Ng and Wilson Ng knew or should have known would incur debts beyond the Debtors'
ability to pay as they came due.  Accordingly, the Court should avoid the B. Mak Lease and
enter an immediate judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction or
writ of assistance granting immediate possession and execution thereon of 26 Bowery 3rd Floor,
and conduct an inquest to determine the amount of damages suffered by the Debtors.  Plaintiffs
therefore request entry of a judgment granting the relief set forth in Count III of the Complaint.

32.    Section 544(b)(1) provides:

(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an
interest of the debtor in property or any obligation incurred by the debtor that is voidable
under applicable law by a creditor holding an unsecured claim that is allowable under
section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §§ 544(b).

33.    Section 548 of the Bankruptcy Code provides as follows (in relevant part):

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of
an insider under an employment contract) of an interest of the debtor in property, or any
obligation (including any obligation to or for the benefit of an insider under an
employment contract) incurred by the debtor, that was made or incurred on or within 2
years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or
defraud any entity to which the debtor was or became, on or after the date that such
transfer was made or such obligation was incurred, indebted;  or
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or
obligation;  and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was
incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a
transaction, for which any property remaining with the debtor was an unreasonably small
capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be
beyond the debtor's ability to pay as such debts matured;  or
(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to
or for the benefit of an insider, under an employment contract and not in the ordinary
course of business.

11.U.S.C. §548(a)(1).

34.    Section 550(a) of the Bankruptcy Code provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided
under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may
recover, for the benefit of the estate, the property transferred, or, if the court so orders,
the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was
made;  or
(2) any immediate or mediate transferee of such initial transferee.

11.U.S.C. §550.

35.    Section 271 of the New York State Debtor-Creditor Law ("**NY-DCL**")[6] still in

effect as of April 3, 2020 provides that "[a] person is insolvent when the present fair salable

value of his assets is less than the amount that will be required to pay his probable liability on his

existing debts as they become absolute and matured." *In re Operations NY LLC.*, 490 B.R. 84, 97

---

[6] As of April 4, 2020, New York State adopted the Uniform Voidable Transactions Act ("**NYUVTA**"), to replace
New York State's then existing fraudulent conveyance law.  Transactions occurring before April 4, 2020 are
governed by the NY-DCL and transactions occurring on or after April 4, 2020 are governed by NYUVTA.
References herein to NY-DCL are references to the now repealed New York State debtor-creditor law.

(Bankr. S.D.N.Y. 2013)(citing former NY-DCL 271).  "Under New York law, the debtor who

transfers property without fair consideration is presumed to be insolvent, and the burden shifts to

the transferee to rebut the presumption." *Id.* (internal cites omitted).

36.     Under New York law in effect as through April 3, 2020, "a transfer may be

avoided as a constructive fraudulent conveyance if made without fair consideration under [] DCL

§ 272 and either (1) the debtor is "rendered insolvent" by the transfer, [former] DCL § 273; (2)

the debtor is left with unreasonably small capital for a pending or imminent business transaction,

[former] DCL § 274; or (3) the debtor intends or believes that he will incur debts beyond his

ability to pay them as they mature. [former] DCL § 275." *In re Singh*, 434 B.R. 298, 309 (Bankr.

E.D.N.Y. 2010).

37.     Section 271 of the New York Uniform Voidable Transactions Act, NYUVTA,

provides as follows:

> (a) A debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater
> than the sum of the debtor's assets.

> (b) A debtor that is generally not paying the debtor's debts as they become due other than
> as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes
> on the party against which the presumption is directed the burden of proving that the
> nonexistence of insolvency is more probable than its existence.

NYUVTA §271.

38.     NYUVTA § 273 provides in relevant part:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the obligation
> was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or
> obligation, and the debtor:
> (i) was engaged or was about to engage in a business or a transaction for which the
> remaining assets of the debtor were unreasonably small in relation to the business or
> transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that the debtor
> would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under paragraph one of subdivision (a) of this section, consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

NYUVTA §273.

39.     NYUVTA § 276 provides in relevant part:

(a) In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in section two hundred seventy-seven of this article, may obtain:
(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and
(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
(i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
(iii) any other relief the circumstances may require.

NYUVTA §276.

**A Finding of Actual Fraud is Warranted Here on the B. Mak Lease**

40.     All known transfers alleged by the Debtors to the Defendant addressed in this

adversary proceeding appear to be limited to the B. Mak Lease transfer, which took place after

April 4, 2020 making the NYUVTA the applicable state law where state law is applied.  To

avoid unnecessary repetition, the Debtors respectfully refer the Court to paragraphs 17-18, 24,

27-30, 40 above in which the alleged actual fraud is discussed and supported in light of the fraud

factors in the *Nanobeak Biotech Inc.*, 2024 WL 166105 case.  For example, the transfers of the

ten leases to family members encompassed substantially all of the leasable space of the Debtor.

(PX6B Ryn.Decl. ¶92 (Megne Yong lease of 26% of leasable area of 2 Bowery, ¶195 (the Anna

Kam lease of 38% of total leasable area of 26 Bowery); *see also* ¶99 (William Ng Lease 2/1/21),

¶121 (Hailey Ng Lease 3/1/21), ¶141 (Steven Ng Lease 5/1/21), ¶161 (D. Tam Lease 7/1/21);

¶173 (Jenny Ng 7/1/21); ¶208 (Barbara Mak 1/1/21); ¶226 (Cody Ng 5/1/21) and ¶246 (Mimin

Ng 9/1/20)(all told, leaseholds to family members comprised 11 of 14 total rentable units).) For

all of the reasons set forth in this paragraph and in paragraphs 17-18, 24, 27-30, 40-41, the Court

should avoid the B. Mak Lease as an actual fraudulent conveyance and enter an immediate

judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance

granting immediate possession and execution thereon.  For all of the reasons set forth here, the

Court should avoid the B. Mak Lease as an actual fraudulent conveyance and enter an immediate

judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance

granting immediate possession and execution thereon.  Plaintiffs therefore requests entry of a

judgment granting the relief set forth in Count III of the Complaint.

**A Finding of Constructive Fraud is Warranted Here on the B. Mak Lease**

41.    A finding of a constructive fraud pursuant to NYUVTA 273 is warranted here

with respect to the B. Mak Lease if it exists.  Here, the Debtor clearly, indisputably, and

admittedly did not receive reasonably equivalent value in exchange for the transfer away of the

admittedly valuable 26 Bowery 3rd Floor leasehold, an essential business asset of the Debtor to

insiders.  The Defendant admits that 2 and 26 Bowery are "valuable" property interests of the

Bowery Entities, (PX6B Ryn.Decl. ¶12, ¶315 (Barbara Mak admits she received substantial

value in the form of leasehold), essential business assets (PX6B Ryn.Decl. ¶24), and a valuable

potential source of income.  (PX6B Ryn.Decl. ¶218, 315).)  Giving of valuable lease space

without collecting rents would be so one sided as to render such a transaction unconscionable.

(PX6B Ryn.Decl. ¶23.) Barbara Mak never paid rent or the recited security deposit as required

by the Barbara Mak Lease.  (PX6B Ryn.Decl. ¶¶219, 222 (Defendant admits she did not pay rent

or security deposit), ¶220, 223 (Defendant admits there is no documentary evidence that she paid

rent or security deposit).)  The Barbara Mak Lease was not on market terms and, in fact, the rent

was both below market. (PX6B Ryn.Decl. ¶213 (below market rent), ¶214 (not market terms).)

The Barbara Mak Lease was never enforced with the commencement of non-pay proceedings

were ever commenced against nonpaying family members like Barbara Mak.  (PX6B Ryn.Decl.

¶¶28 (Def. admits no nonpay proceedings commenced), ¶217 (Def. admits never enforced).)

Barbara Mak never registered the utilities in her name as required by the Barbara Mak Lease and

there is no evidence that she ever paid for utility services.  (PX6B Ryn.Decl. ¶221 (Def. admits

did not register utilities), PX1-24 ¶6 (Barbara Mak Lease requires tenant to pay for and arrange

for utility services).)  At the same time, the Bowery Entities were admittedly engaged in

transactions during which their only other assets, their cash, were admittedly unreasonably small

in relation to the business.  (*See e.g*, PX6B Ryn.Decl. ¶357, PX1-28 (end of month balances of

no more than $145 in the 26 Bowery Bank of America account ending in 4102 between April

2021 and March 2022 (Ng -2004 Prod00001 -51) and of no more than $73 in the 2 Bowery

Holding TD Bank account ending 1828 between March 2021 and March 2022 (Ng -2004

Prod00055 - 82).  Finally, Steven Ng and Wilson Ng either intended to incur, or believed, or

reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to

pay as they became due since they were behind in all of the Bowery Entities debts.  (*See*

Ryn.Decl., ¶215 (citing PX4 (historical tax bills), PX5 (historical water bills), (PX16 (Bowery

Mezz LLC proof of claim showing default and arrears).)  Accordingly, the Court should avoid

the B. Mak Lease as an constructive fraudulent conveyance and enter an immediate judgment of possession of 26 Bowery 3rd Floor with a warrant of eviction or writ of assistance granting immediate possession and execution thereon.  Plaintiffs therefore requests entry of a judgment granting the relief set forth in Count III of the Complaint.

### D. On Count IV, To The Extent That The Court Avoids Any Transactions Including But Not Limited To The B. Mak Lease, The Court Should Award The Value Of Such Transfers To The Debtors Pursuant To 11 U.S.C. §550 And As Requested By The Debtors.

42.     To the extent that the Court finds Barbara Mak had a lease and avoids it but determines not to award possession of 26 Bowery 3rd Floor, then pursuant to 11 U.S.C. §550 (which code section is set forth in relevant part in paragraph 34 above) the Debtors seek an order awarding the value of such transfer.  Section 550 makes clear that to the Debtor as trustee "may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee."  11 U.S.C. §550.  The Debtors' evidence shows that Barbara Mak is an initial transferee of the 26 Bowery 3rd Floor leasehold.  Plaintiffs therefore requests entry of a judgment granting the relief set forth in Count IV of the Complaint.

### E. On Count V, To The Extent That The Court Determines That Barbara Mak Is In Possession, Custody Or Control Of Property Of These Estates, The Court Should Enter An Order Directing The Turnover Of Such Property To The Debtors.

43.     To the extent that the Court determines that the Barbara Mak is in possession, custody or control of property of the estates, such as the 26 Bowery 3rd Floor leasehold, the Debtors submit that pursuant to 11 U.S.C. §§ 541 and 542 the Court should require Barbara Mak to turn over such property to the Debtors.  Plaintiffs therefore request entry of a judgment granting the relief set forth in Count V of the Complaint.

44.     Section 541 of the Bankruptcy Code provides in relevant part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is--

(A) under the sole, equal, or joint management and control of the debtor;  or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree;  or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. §541.

45.     Section 542 of the Bankruptcy Code provides in relevant part:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. §542.

46.     Here, Barbara Mak is admittedly in possession, custody and control of 26 Bowery

3rd Floor, a leasehold of the Debtor.  The evidence makes that clear.  Therefore, the Court

should require Barbara Mak to turn over 26 Bowery 3rd Floor to the Debtors.  Plaintiffs

therefore request entry of a judgment granting the relief set forth in Count V of the Complaint.

### F.  On Count VI, The Court Should Award Monetary Damages Against Barbara Mak For Prepetition And Postpetition Use And Occupancy In An Amount.

47.     To the extent that the Court determines that B. Mak Lease, if it exists, is

enforceable, or that such Lease is void, or is rescinded and that no election of remedies is

required, the Debtors have monetary claims for Barbara Mak's use and occupancy of 26 Bowery

3rd Floor from at least the date of the B. Mak Lease, January 1, 2021, through the date Barbara

Mak vacates such unit.  The Court may determine liability from the undisputed record of use,

occupancy, possession or control pursuant to the B. Mak Lease.  The Debtors request that

amount of such monetary damages be determined at a separate inquest.  Plaintiffs therefore

request entry of a judgment granting the relief set forth in Count VI of the Complaint.

48.     Barbara Mak uses and occupies 26 Bowery 3rd Floor and has done so since April

26, 2019, (PX6B Ryn.Decl. ¶391), at least January 1, 2021, the date of the B. Mak Lease. (PX6B

Ryn.Decl. ¶¶209-210.)  She admits that she did not pay rent under the B. Mak Lease.  She

purports to occupy such apartment pursuant to the B. Mak Lease.  The rent recited in the B. Mak

Lease is just $3,500 monthly (which was anyway never paid) but the rent in the 26 Bowery

Certified Rent Roll was $5,650 per month, which Barbara Mak admits she never paid.  (PX6B

Ryn.Decl. ¶78.). Barbara Mak admits that the leasable space is a valuable asset and source of

income of the Debtors.  (PX6B Ryn.Decl. ¶12, ¶315 (Barbara Mak admits she received

substantial value in the form of leasehold), essential business assets (PX6B Ryn.Decl. ¶24), and

a valuable potential source of income.  The rent recited in the lease is far below market value for

comparable space in a comparable location.  (PX6B Ryn.Decl. ¶213 (below market rent), ¶214

(not market terms).)  The Independent Manager has served monthly rent demands on Barbara

Mak and 26 Bowery 3rd Floor since April 2022.  (PX6B Ryn.Decl. ¶386.)  Barbara Mak never

made a single payment in furtherance of such rent demands or otherwise.  (Id.).]. The

Independent Manager has served monthly rent demands on Barbara Mak and 26 Bowery 3rd

Floor since April 2022.  (PX6B Ryn.Decl. ¶385.).  Barbara Mak never made a single payment in

furtherance of such rent demands or otherwise. (*Id*.) The evidence demonstrates that Barbara

Mak used and occupied 26 Bowery 3rd Floor and did not pay the rent amount or the value of the

use and occupancy to the Debtors.  The value of such apartment is property of the Debtors.

Accordingly, the Court should conclude that Barbara Mak is liable to the Debtors for the use and

occupancy of 26 Bowery 3rd Floor in an amount to be determined at a separate inquest on

damages.  Plaintiffs therefore request entry of a judgment granting the relief set forth in Count

VI of the Complaint.

### G.  On Count VIII, The Court Should Enter An Order Finding Barbara Mak Was Unjustly Enriched At The Expense Of The Debtors, Resulting In Harm To The Debtors, And Directing Barbara Mak To Compensate The Debtors For Such Harm.

49.    The Debtors' evidence demonstrates that Barbara Mak was unjustly enriched at

the expense of the Debtors.  Since at least January 1, 2021, Barbara Mak has been unjustly

enriched by her rent-free use and possession of 26 Bowery 3rd Floor.  She neither paid the fair

use and occupancy, nor the recited rent called for under the B. Mak Lease, nor the security

deposit, nor the utilities, nor turned over possession of such apartment.  It is against good

conscience and equity to allow Barbara Mak to retain the benefits of such property at the expense

and deprivation of the Debtors.  Therefore, the Debtors are entitled to a judgment of possession

of 26 Bowery 3rd Floor with writ of execution or writ assistance and immediate execution of

same and a determination of liability against Barbara Mak for her retention of the Bowery

Entities' cash at the Bowery Entities' expense.  It would be against equity and good conscience

to allow her to retain such leasehold. Plaintiffs therefore request entry of a judgment granting the relief set forth in Count VIII of the Complaint.

50.     In New York, to establish unjust enrichment, a plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered[.]" *Kramer v Greene*, 36 N.Y.S.3d 448, 452 (1st Dept., Aug. 11, 2016)(citing *Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 182 (NY 2011)(internal quotation marks omitted)).

51.     Here, Barbara Mak was and continues to be enriched by her unpaid use and enjoyment of 26 Bowery 3rd Floor. (PX6B Ryn.Decl. ¶23.) Barbara Mak never paid rent or the recited security deposit as required by the Barbara Mak Lease. (PX6B Ryn.Decl. ¶¶219, 222 (rent and security not paid), ¶220, 223 (no documentary evidence of rent or security deposit paiod).) The electric for that unit, which is how it is heated, is registered in the name of Tien Yick Co. Inc. the legacy company of the Ng family that formerly owned 26 Bowery. (*See* PX15 (Con Edison statements showing 26 Bowery 3rd floor registered to Tien Yick at Bates No. PX15-000032 "05 3FL TIEN YICK CO INC").) Barbara Mak has provided no proof that she even pays the electric bills for the service to her unit. Barbara Mak failed to respond to the Debtors' document demands in discovery that required her to show proof of payment of utilities among many other things. Barbara Mak failed to provide even a single document in response to such document demands. Barbara Mak has provided no proof that she even pays the electric bills for the service to her unit. Barbara Mak failed to respond to the Debtors' document demands in discovery that required her to show proof of payment of utilities among many other things. Barbara Mak failed to provide even a single document in response to such document demands. The leasehold is property of Debtors and Barbara Mak's retention of same is at the expense of the Debtors. As long as Barbara Mak retains such property, the Debtors cannot utilize or benefit

from them.  It is against equity and good conscience to allow Barbara Mak retain such property.

Therefore, the Debtors are entitled to a judgment of possession of 26 Bowery 3rd Floor with writ

of execution or writ assistance and immediate execution of same and a determination of liability

against Barbara Mak for her retention same at the Bowery Entities' expense.  It would be against

equity and good conscience to allow her to retain such leasehold.  Plaintiffs therefore request

entry of a judgment granting the relief set forth in Count VIII of the Complaint.

### H.  On Count VIII, The Court Should Enter An Order Finding That Barbara Mak Engaged In A Civil Conspiracy For The Purpose Of Hindering, Delaying Or Defrauding Creditors And The Debtors And Awarding The Debtors Damages.

52.     To the extent that the Court finds that Steven Ng, Wilson Ng or Barbara Mak

committed a tort against the Debtors such as the fraud, breach of fiduciary duty, or conversion

that is alleged, the evidence demonstrates that Barbara Mak engaged in a civil conspiracy to

accomplish such tort for the purpose of hindering, delaying or defrauding creditors.

Accordingly, the Court should determine that Barbara Mak is liable for her role in a civil

conspiracy in an amount to be determined at a separate inquest.  Plaintiffs therefore request entry

of a judgment granting the relief set forth in Count IX of the Complaint.

53.     "New York does not recognize an independent tort of civil conspiracy, *In re

Magnesium Corp. of America*, 399 B.R. 722, 774–75 (Bankr. S.D.N.Y. 2009) (citing *Kirch v.

Liberty Media Corp.,* 449 F.3d 388, 401 (2d Cir. 2006), but does permit a claim of civil

conspiracy to 'connect the actions of separate defendants with an otherwise actionable tort." *Id.*

(citing *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (NY 1986).

"The claim of civil conspiracy thus requires a threshold determination that the plaintiff has

adequately alleged an actionable underlying tort."  *Id.* (citing *Charney v. Sullivan & Cromwell

LLP*, 2007 WL 2822423, at *3 (N.Y. Sup.Ct. Sept. 27, 2007).  After this threshold showing is

made, a plaintiff must allege (i) facts constituting a common agreement or understanding, (ii) a

common design or objective, (iii) the tortious or criminal acts committed in furtherance of the

common agreement and objective, (iv) the intent and knowledge of the defendants regarding the

acts, and (v) damage or injury as a result of the acts of the defendants. *Id.* (citing *JP Morgan*

*Chase Bank v. Winnick*, 406 F.Supp.2d 247, 259 (S.D.N.Y. 2005)).

54.     Here, the Debtors submit that the grounds for the underlying torts of fraud (*see*

*infra* ¶¶18, 22, 24-25, 27-30, 40-41) including where fraud, (*see infra* ¶¶18, 22, 24, 27-29, 40-

41), and breach of fiduciary duty, (*see infra* ¶¶22, 25, 30), are established.  The facts establish a

common agreement or understanding between Barbara Mak and Wilson Ng as they executed on

behalf of themselves and on behalf of the Bowery Entities numerous sham leases that would not

be enforced, all while the Bowery Entities were insolvent.  (*See* PX6B Ryn.Decl., ¶215; see also

PX4 (historical tax bills), PX5 (historical water bills), (PX16 (Bowery Mezz LLC proof of claim

showing default and arrears). In fact, the B. Mak Lease was just one of ten other leases that

Wilson Ng and Steven Ng entered into with related family members and insiders after incurring

$8.6 million in debt, experiencing a failure to pay debts as they came due between July 1, 2019

and the Petition Date.  (PX6B Ryn.Decl. ¶84 (Megne Yong Lease 1/12/22), ¶99 (William Ng

Lease 2/1/21), ¶121 (Hailey Ng Lease 3/1/21), ¶141 (Steven Ng Lease 5/1/21), ¶161 (D. Tam

Lease 7/1/21); ¶173 (Jenny Ng 7/1/21); ¶193 (Anna Kam 8/23/21), ¶208 (Barbara Mak 1/1/21;

¶226 (Cody Ng 5/1/21) and ¶246 (Mimin Ng 9/1/20); *see also* PX6B Ryn.Decl. ¶¶ 44, 47-57, 60-

64, 148, 338, 340, 343, 346, 350, 354, 370-373 (collectively evidencing the failure of the

Bowery Entities to pay their debts as they were coming due).  The facts establish that there was a

common design or objective, namely the continued use and occupancy of nearly all of the

Bowery Entities' valuable leaseholds by insiders for no consideration to the estates at the

expense of and to the detriment of the Bowery Entities.  In furtherance of this common objective,

Steven Ng and Wilson Ng and all of the other insider lease counterparties created numerous

falsified business records of the Bowery Entities including the sham leases and the certified rents

rolls. Steven Ng and Wilson Ng knowingly created these false documents and in the case of the

Certified Rent Roll, tendered them to the prepetition lender in order to induce the $8.6 million in

financing. Finally, the facts show that the Bowery Entities were harmed by the acts of Steven

Ng, Wilson Ng and the related, insider family members by the deprivation of valuable rental

income that resulted in insolvency. The Bowery Entities failed to gain the economic benefit of

the valuable leaseholds and substantial debts went unpaid resulting in current liabilities in excess

of $16 million. Accordingly, the Court should determine that Barbara Mak is liable for her role

in a civil conspiracy in an amount to be determined at a separate inquest. Plaintiffs therefore

requests entry of a judgment granting the relief set forth in Count IX of the Complaint.

**I. On Count IX, The Court Should Enter An Order Finding That Barbara Mak Actually Or Constructively Hindered, Delayed Or Defrauded The Debtors And Creditors Of The Debtors And Awarding The Debtors Legal Fees.**

55. To the extent that the Court finds that Barbara Mak committed an actual or

constructive fraud against the Debtors, state law permits the Debtors to obtain legal fees against

Barbara Mak. The Debtors submit that the facts demonstrate that Barbara Mak committed actual

or constructive frauds in all the ways set forth above in paragraphs 40-41 above. Accordingly,

the Court should determine that Barbara Mak is liable for the Debtors' legal fees in an amount to

be determined at a separate inquest. Plaintiffs therefore request entry of a judgment granting the

relief set forth in Count X of the Complaint.

56. NYUVTA 276-A provide as follows:

> In an action or special proceeding under this article in which a judgment creditor who has been awarded by court order or agreement or has waived attorney's fees available to prevailing parties by the terms of the statute under which the creditor's underlying claim arose, or representative asserting the rights of such judgment creditor, recovers judgment avoiding any transfer or obligation, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the creditor, or creditor representative, incurred in such action or special proceeding under this article as an additional amount required to satisfy the creditor's claim, and the creditor, or creditor representative, shall have judgment

therefor against the debtor and, subject to the defenses and protections in section two hundred seventy-seven of this article, against any transferee (or person for whose benefit the transfer was made) against whom relief is ordered, in addition to the other relief granted by the judgment. The fee so fixed shall be without regard, or prejudice, to any agreement, express or implied, between the creditor, or the creditor representative, and his or her attorney with respect to the compensation of such attorney.

NYUVTA §276-A.

57.     Here, the facts establish that the B. Mak Lease transfer was an actual or fraudulent conveyance.  Accordingly, NYUVTA 276-A provides that the Court shall fix attorneys' fees incurred in this adversary proceeding.  Accordingly, the Court should determine that Barbara Mak is liable for the Debtors' legal fees in an amount to be determined at a separate inquest. Plaintiffs therefore request entry of a judgment granting the relief set forth in Count X of the Complaint.

### J.  Dismissal of the Affirmative Defenses is Warranted

58.     The Defendant's numerous affirmative defenses should be dismissed.  In the answers, the Defendants raise several categories of affirmative defenses ("Affirm. Defs."). Affirm. Def. "First" states that the complaint fails to state a claim upon which relief can be granted.  As set forth above, the Debtors submit this affirmative defense should be dismissed based on the clear evidence of a failure to form a valid contract, fraud, clear breaches of fiduciary duty and significant harms to the Debtors.  Affirm. Def. "Second" states that the principle of laches should preclude the relief.  This unsupported legal conclusion should be dismissed.  As an equitable defense, the Defendant must come to the Court with clean hands as to the matter for which they seek relief and they do not here.  Barbara Mak pays neither rent nor utilities, and did not pay her security deposit, and has been living at the expense Bowery Entities for several years at the very least.  Even if the forgoing were not true, laches does not apply because the Debtors did not delay in bringing the action because the bankruptcy statute of limitation is not up for several months and state law counterpart even longer.  Further, the

Defendant was not harmed—nor could she be—since she did not pay rent or utilities as she would have if she lived anywhere else.  In other words, any delay benefited not prejudiced her.  Affirm. Defs. "Third", "Fourth" and "Fifth" are all relate to a double recovery, which Debtors agree is impermissible and is not intended here.  Affirm. Def. "Sixth" is based on statute of limitations, which has not expired and therefore should be dismissed.  Affirm. Def. "Seventh" should be dismissed because in such defense Defendant focuses a "debtor" when such section addresses transferees.  Affir. Def. "Eighth" should be dismissed because Defendant wrongly claims that Barbara Mak is a good faith transferee.  Affirm. Def. "Ninth" should be dismissed because Defendant wrongly claims that Barbara Mak is a mere conduit not a transferee.  Affirm. Def. "Tenth" states that "to the extent that . . . Defendant disputes his/her right to possession of any property subject to a[n Insider Lease], Plaintiff is not entitled to the remedy of turnover . ..]" Debtors submit that none of the Defendants dispute their possession.  If they did, such Defendant would simply surrender and likely obviating the need for additional litigation.  Finally, Affirm. Def. "Eleventh" should be dismissed because Defendant wrongly "objects" to any claim of the Debtors for prepetition use and occupancy as being prior to any interest in which the Bankruptcy Estate may have had in the leased premises.

59.      As an initial matter, when Defendant was demanded in discovery to produce any documents to support Defendant's affirmative defenses, Defendant Barbara Mak produced none.  Accordingly, the Court should not consider any documents offered at trial in support of her affirmative defenses.  Further, the Defendant failed to respond to Debtors' interrogatories so, to the extent that any support for an affirmative defense would have been revealed in the interrogatory responses, the Court should not consider them.  Finally, "[t]he general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim." *National Communications Ass'n Inc. v. AT & T Corp.*, 238 F.3d 124, 131 (2nd Cir. 2001)

(internal cites omitted) (*cf Hallinan v. Republic Bank & Trust Co.*, 519 F.Supp.2d 340, 358

(S.D.N.Y. 2007)).  Each affirmative defense is addressed below and for the reasons that follow,

each should be dismissed.

### (i)   First Affirmative Defense:  Failure to State a Claim

60.    As to all Counts, the Defendant alleges that the Complaint fails to state a cause of

action upon which a claim for relief may be based. The Court should dismiss this unsupported

First affirmative defense on the basis that, as set forth above, Plaintiffs have set forth and

supported with citations to evidence in the record and to legal authority the specific basis why

the relief requested is warranted.

### (ii)   Second Affirmative Defense: Laches

61.    As to all Counts, the Defendant wrongly asserts the doctrine of laches as an

affirmative defense barring recovery.  As the Second Circuit explained,

> Laches is based on the maxim, "*vigilantibus non dormientibus aequitas subvenit,*"
> meaning "equity aids the vigilant, not those who sleep on their rights." (citing *see Ivani
> Contracting Corp. v. City of New York,* 103 F.3d 257, 259 (2d Cir.).  It is an equitable
> defense that "bars a plaintiff's equitable claim where he is guilty of unreasonable and
> inexcusable delay that has resulted in prejudice to the defendant." *Id.* (internal quotation
> marks and citations omitted). A party asserting the defense of laches must establish that:
> (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed
> in taking action; and (3) the defendant was prejudiced by the delay.

*See, e.g., Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.,* 17 F.3d 38, 44 (2d Cir.1994);

*Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2nd Cir. 1998).

62.    First, laches is an equitable defense.  *See In re Swift*, 496 B.R. 89, 99 (Bankr.

E.D.N.Y. 2013).  "It is well-settled that 'he who comes into equity must come with clean

hands.'" *Id.* (citing *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814,

65 S.Ct. 993, 89 L.Ed. 1381 (1945).)  "As explained by the Supreme Court:

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes
> the doors of a court of equity to one tainted with inequitableness or *bad faith relative to*

*the matter in which he seeks relief*, however improper may have been the behavior of the [adversary]. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity." Thus while "equity does not demand that its suitors shall have led blameless lives" as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.

This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." Accordingly, one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character.  Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim....

*Id*. (*citing Precision*, 324 U.S. at 814–815, 65 S.Ct. 993 (internal citations omitted and emphasis added).

63.     Here, the Defendant comes to this Court in bad faith related to the matter in which she seeks equitable relief.  As noted above, the Defendant openly admitted that she does not pay rent for her residential unit at 26 Bowery and never did, nor did she pay the required security deposit, nor did she register the utilities in her name that service 26 Bowery 3rd Floor, and there is no evidence she even paid her own utilities, evidence Barbara Mak was required to proffer if it existed.  This Defendant may not attempt to seek equity from this Court (i) while she simultaneously strips value from these estates by enjoying the use of the 26 Bowery 3rd Floor free of charge and not in compliance with the express terms of the lease, and (ii) while she enjoys the benefit of utilities without having ever registered them in her own name or paid for same, all of which is clearly inequitable and patently unfair to these estates and creditors thereof. Such inequitable conduct should bar any claim for equitable relief based on laches.

64.     Even if this Court entertains an equitable defense from this Defendant, laches does not apply here because laches requires unreasonable delay and prejudice to the Defendant. *Swift*, 496 B.R. at 99 (citing *Ackerman v. Schultz (In re Schultz),* 250 B.R. 22, 37–38 (Bankr.E.D.N.Y. 2000) ("Laches bars the assertion of a claim based upon the plaintiff's

unreasonable delay which prejudices the other party.")  Here, even if Court concluded that the

Plaintiff unreasonably delayed in bringing its claim to find void or to rescind the B. Mak Lease

(and the bankruptcy statute of limitations does not even expire for another two months), there

could not have prejudice to the Defendant.  The opposite is true.  The Defendant has benefited

from rent free living space month after month and free utilities and will continue to do so until a

judgment of possession is entered *and enforced* in favor of Plaintiff.  Accordingly, the Court

should dismiss the Second affirmative defense based on laches.

### (iii)   Third Affirmative Defense: Prior Voided Lease

65.     The Defendant wrongly asserts that the relief in Count I seeking a declaratory

judgment to declare the B. Mak Lease void *ab initio* must be dismissed "to the extent that any

Lease. . .has been previously terminated [in this case], . . . any action for a declaratory judgment .

. . declaring such lease to be void must be dismissed."  Though this affirmative defense is too

broadly worded, the Debtors agree that to the extent that the B. Mak Lease has been previously

terminated in this case and a judgment of possession granted, the Court may dismiss Count I in

this adversary proceeding.  As of the date hereof, Barbara Mak remains in possession of 26

Bowery 3rd Floor and her lease or purported lease has not been terminated by order of this Court

or surrendered.  Accordingly, as of the date hereof, this Third affirmative defense should be

dismissed.

### (iv)   Fourth Affirmative Defense: Prior Rescinded Lease

66.     The Defendant wrongly asserts that the relief in Count II seeking a declaratory

judgment to declare the B. Mak Lease void *ab initio* must be dismissed "to the extent that any

Lease. . .has been previously terminated [in this case], . . . any action for a declaratory judgment .

. . declaring such lease to be void must be dismissed.  Though this affirmative defense is also too

broadly worded, the Debtors agree that to the extent that the B. Mak Lease has been previously

terminated or rescinded in this case and a judgment of possession granted, the Court may dismiss

Count II in this adversary proceeding.  As of the date hereof, Barbara Mak remains in possession

of 26 Bowery 3rd Floor and her lease or purported lease has not been terminated or rescinded by

order of this Court or surrendered.  Accordingly, as of the date hereof, this Fourth affirmative

defense should be dismissed.

### (v)    Fifth Affirmative Defense: Recovery Limited to Single Satisfaction

67.    The Defendant asserts that the relief in Count III seeking to avoid certain

transactions as fraudulent conveyances should be limited to a single satisfaction of such debt as

set forth in 11 U.S.C. §550(d).  Section 550(d) provides simply that: "The trustee is entitled to

only a single satisfaction under subsection (a) of this section."  The Debtors agree that only a

single satisfaction is permitted and never sought, nor would seek or accept, a double recovery.

Accordingly, as of the date hereof, this Fifth affirmative defense simply is inapplicable in this

adversary proceeding.

### (vi)    Sixth Affirmative Defense: Statute of Limitations

68.    The Defendant asserts that the relief in Count III seeking to avoid certain

transactions as fraudulent conveyances is time barred pursuant to the applicable statutes of

limitation.  The Debtors seek relief pursuant to section 544 and 548 of the Bankruptcy Code.

Section 544 allows the Debtor to seek relief pursuant to applicable state law.  As noted above in

footnote [2 on page 17] above, state law changed as of April 4, 2020.  As of April 4, 2020, New

York State adopted the NYUVTA to replace New York State's then existing fraudulent

conveyance law, the NY-DCL.  Transactions occurring before April 4, 2020 are governed by the

NY-DCL, which carried a 6 year statute of limitations.  The New York Civil Practice Law and

Rules, section 213(8) specifies that fraud claims carry a 6- year state of limitations.  *See* CPLR

213(8)("an action based upon fraud; the time within which the action must be commenced shall

be the greater of six years from the date the cause of action accrued or two years from the time

the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with

reasonable diligence have discovered it.). The Debtor brought this action on July 21, 2023. Six

years prior to that date is July 21, 2017. The Debtor is not asserting any claims based on

transactions going back further than April 26, 2019. The transactions, if any, occurring between

April 26, 2019 and April 4, 2020 are subject to a 6 year statute of limitations. Even if the shorter

two-year statute of limitations applied, the Debtors did not first start learning of these

transactions until subpoenaed bank records began to be produced and reviewed in early August

of 2022 and commenced the Complaint in this adversary proceeding less than a year later.

Accordingly, for claims arising under the NY-DCL, the statute of limitations had not yet run

even in the most generous reading of such statute.

69.     For transactions arising after April 4, 2020 like the B. Mak Lease, which are

governed by NYUVTA, claims must be brought within four years of the transaction or within

one year of when it could have reasonably been discovered. Section 278 if the NYUVTA

provides:

> A claim for relief with respect to a transfer or obligation under this article is extinguished
> unless action is brought:
>
> (a) under paragraph one of subdivision (a) of section two hundred seventy-three of this
> article, not later than four years after the transfer was made or the obligation was incurred
> or, if later, not later than one year after the transfer or obligation was or could reasonably
> have been discovered by the claimant;
>
> (b) under paragraph two of subdivision (a) of section two hundred seventy-three or
> subdivision (a) of section two hundred seventy-four of this article, not later than four
> years after the transfer was made or the obligation was incurred; or
>
> (c) under subdivision (b) of section two hundred seventy-four of this article, not later than
> one year after the transfer was made.

NYUVTA § 278. Similarly, the Debtor brought this action on July 21, 2023. Four years prior to

that date is July 21, 2019. The transactions occurring from and after April 4, 2020 like the B.

- 42 -

Mak Lease carry a statute of limitations of April 4, 2024. Even of the shorter one-year statute of

limitations applied, the Debtors did not first start learning of these transactions until subpoenaed

bank records began to be produced and reviewed in early August of 2022 and commenced the

Complaint in this adversary proceeding less than a year later. Accordingly, for claims arising

under the NYUVTA, the statute of limitations had not yet run even in the most generous reading

of such statute. Accordingly, as of the date hereof, this Sixth affirmative defense should be

dismissed.

**(vii)   Seventh Affirmative Defense: Defendant Not a Debtor**

70.     As to Count III, the Defendant asserts that the Defendant is not a 'debtor' of the

Plaintiff as purportedly contemplated in Count III of the Complaint. Count III of the Complaint

seeks to avoid transactions involving the debtor, the Debtor here, and Barbara Mak was party to

those transactions. There is no suggestion that Barbara Mak is the "debtor" as that term is used

in the statutes. Accordingly, this Seventh affirmative defense should be dismissed as it seeks to

avoid between Barbara Mak and the Debtors, such as the B. Mak Lease or any other transaction

of the Bowery Entities in which Barbara Mak is found to be party, or initial, immediate or

mediate transferee.

**(viii)   Eighth Affirmative Defense: Alleged Good Faith Transferee**

71.     Similarly, the Defendant asserts that for Count IV the Defendant is a good faith

transferee under 11 U.S.C §550(e)(1) that is entitled to a lien for any avoided amount. Count IV

of the Complaint seeks to recover from initial, immediate and mediate transferees pursuant to

section 550 of the Bankruptcy Code. Pursuant to section 550(b), a good faith transferee is one

who "takes for value" and "without knowledge" of the voidability of the transfer avoided. As an

initial transferee, Barbara Mak is not eligible for the good faith defense found in 11 U.S.C.

§550(b). *See In Re Global Protection USA, Inc.*, 546 B.R. 586, 620 (Bankr. D.N.J. 2016)(it is

important to determine whether the entity from which a plaintiff seeks to recover is an initial transferee or an entity for whose benefit such transfer was made, versus an immediate or mediate transferee, as only the latter may assert the section 550(b) defense"). Even if Barbara Mak was an immediate or mediate transferee, the record is clear that Barbara Mak has never paid rent, and never paid the required security deposit, and never paid her utilities nor provided any material value to the Bowery Entities whatsoever. When demanded in discovery to produce any documents to support Defendant's affirmative defenses, Defendant Barbara Mak produced none. Accordingly, there is no documentary proof that Barbara Mak took any transfer of property of the Debtor "for value" and she knew or should have known that the B. Mak Lease was voidable. Accordingly, she could not be a good faith transferee entitled to enjoy that safe harbor defense. Accordingly, this Eighth Affirmative Defense should be dismissed.

### (ix)   <u>Ninth Affirmative Defense: Alleged Mere Conduit</u>

72.     As to Count IV, the Defendant asserts that the Defendant is "mere conduit" of payment and is therefore not a transferee under 11 U.S.C §550(e)(1). This position is nonsensical since Barbara Mak personally occupied and continues to occupy 26 Bowery 3rd Floor and is not a conduit of any transferred value. Accordingly, Barbara Mak's conduct demonstrates that she squarely qualifies as an initial transferee. Accordingly, this Ninth Affirmative Defense should be dismissed.

### (x)   <u>Tenth Affirmative Defense: If Right to Use or Possess Disputed</u>

73.     As to Count V, the Defendant asserts that "to the extent that" the Defendant disputes her right to use or possess any property subject a lease, then Plaintiff is not entitled to recover a turnover. The very reason that the Debtors are going to trial is that Barbara Mak tenaciously holds 26 Bowery 3rd Floor without paying rent and refuses to surrender that unit

short of a trial and entry of a judgment of possession.  As this affirmative defense relies on a

fallacy of a disputed use or possession, this Tenth Affirmative Defense should be dismissed.

**(xi)**    **Eleventh Affirmative Defense: Objection to Prepetition Use and Occupancy**

74.    Finally, as to Count VI, the Defendant 'objects' as her affirmative defense to the

Debtor seeking use and occupancy for the prepetition period on the basis that this right to recover

is "prior to any interest which the Bankruptcy Estate may have had in the leased premises."  The

Debtors have owned the Properties since no later than April 26, 2019.  All rights for the use and

possession or rents for validly leased spaces arose no later than that time.  The unpaid use and

occupancy or failure to receive any rent payments that were made constituted claims of the

Debtors.  Section 101(5) defines a claim as a right to payment whether or not such right is

reduced to a judgment, whether disputed or not.  11 U.S.C. §101(5).  Accordingly, there is no

basis to think that the Debtor lacks the right to bring a claim for use and occupancy of one of its

valuable leaseholds, which are admittedly valuable assets of the Debtor.  Accordingly, this

Eleventh Affirmative Defense should be dismissed.

75.    For all of the foregoing reasons, the Court should dismiss each of the Defendant's

affirmative defenses.

**RESERVATION OF RIGHTS**

76.    Plaintiffs reserves all rights against the Defendant and with respect to 26 Bowery

3rd Floor until all matters, without limitation, between the chapter 11 Debtors and Defendant are

resolved on a final, non-appealable basis.

**CONCLUSION**

Plaintiffs hereby requests therefore,

(a)(i) **On Count I**, that the Court enter an order and declaratory judgment, pursuant to 28

U.S.C. § 2201(a), holding, declaring, ordering and adjudging the Barbara Mak Lease to be void

*ab initio* and granting an immediate judgment of possession of 26 Bowery 3rd Floor with a

warrant of eviction or writ of assistance granting immediate possession and execution thereon;

(ii) **On Count II**, that the Court enter an order and declaratory judgment, pursuant to 28

U.S.C. § 2201(a), holding, declaring, ordering and adjudging the Barbara Mak Lease to be

rescinded and granting an immediate judgment of possession 26 Bowery 3rd Floor with a

warrant of eviction or writ of assistance granting immediate possession and execution thereon;

(iii) **On Count III**, that the Court enter an order and judgment pursuant to sections

544(b), 548 and 550 of the Bankruptcy Code NYUFTA §§ 270 - 276(b) avoiding the Barbara

Mak Lease as an actual fraudulent or constructive fraudulent conveyance and to the extent the

Barbara Mak Lease is avoided, enter an immediate judgment of possession of 26 Bowery 3rd

Floor with a warrant of eviction or writ of assistance granting immediate possession and

execution thereon;

(iv) **On Count IV**, to the extent that the Court avoids the Barbara Mak Lease but

determines not to award the Debtors possession of 26 Bowery 3rd Floor, then pursuant to 11

U.S.C. §550, that the Court enter an order and judgment recovering from Barbara Mak the value

of the use and occupancy of the 26 Bowery 3rd Floor leasehold by Barbara Mak in an amount to

be determined at a separate inquest;;

(v) **On Count V,** to the extent that the Court determines that Barbara Mak is in

possession, custody or control of property of the estates, including the 26 Bowery 3rd Floor

leasehold, that the Court enter an order and judgment, pursuant to 11 U.S.C. §§ 541 and 542,

requiring Barbara Mak to turn over such property to the Debtors;

(vi) **On Count VI,** to the extent that the Court determines that Barbara Mak Lease is

enforceable, or that such lease is void, or rescinded, and that no election of remedies is required,

that the Court enter an order and judgment that Barbara Mak is liable to the Debtors for Barbara

Mak's use and occupancy of 26 Bowery 3rd Floor from at least the commencement of the

Barbara Mak Lease, January 1, 2021, through the date Barbara Mak vacates such unit in an

amount to be determined at a separate inquest;

(vii) **On Count VIII**, that the Court enter an order and judgment that Barbara Mak was

unjustly enriched and that the Debtors are entitled to a judgment of possession of 26 Bowery 3rd

Floor with writ of execution or writ assistance and immediate execution of same and a

determination of liability against Barbara Mak for her unjust retention of the Debtor's leasehold

at the Debtors' expense in an amount to be determined at a separate inquest;;

(viii) **On Count IX,** to the extent that the Court finds that Barbara Mak, or Steven Ng, or

Wilson Ng committed a tort against the Debtors, that the Court enter an order and judgment

finding Barbara Mak liable for her participation in a civil conspiracy for the purpose of

hindering, delaying or defrauding creditors in an amount to be determined at a separate inquest;

and

(ix) **On Count X**, to the extent that the Court finds that Barbara Mak committed an actual

or constructive fraud against the Debtors, that the Court enter an order and judgment pursuant to

NYUVTA §276-A finding Barbara Mak liable for the Debtors' legal fees in an amount to be

determined at a separate inquest; and

(b) that the Court grant such other and further relief as this Court deems just and

appropriate.

Dated: New York, New York                    **RAVERT PLLC**

February 1, 2024

/s/ Gary O. Ravert
Gary O. Ravert
16 Madison Square West, FL12, #269
New York, New York 10010
Tel: (646) 961-4770

Fax: (917) 677-5419
gravert@ravertpllc.com

*Special Litigation Counsel for the Debtors*